# 2009 DTA 94

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VI**

EDGARDO RODRÍGUEZ POMALES, MUNICIPIO AUTÓNOMO DE BAYAMÓN
Demandante-Apelante

v.

JESSE ORTIZ ROSADO
Demandada-Apelada

Núm. KLAN-2008-01090

San Juan, Puerto Rico, a 24 de junio de 2009

Panel integrado por su Presidente, el Juez Rivera Román,
y los Jueces Coll Martí y Vizcarrondo Irizarry

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El Municipio de Bayamón (Municipio) nos solicita que revoquemos una sentencia del Tribunal de Primera Instancia en la cual se ordenó agotar los remedios administrativos en vez de paralizar el funcionamiento de un establecimiento comercial (colmado-cafetín) llamado *El Padilla*.

Por los fundamentos que esbozamos a continuación, se revoca la sentencia apelada y se ordena la continuación de los procedimientos en el Tribunal de Primera Instancia.

### I

El señor Pablo Padilla es dueño de un local comercial que se identifica como *Colmado El Padilla*, ubicado en el Barrio Teresita en el Municipio de Bayamón. Durante el año 1952, se le otorgó al señor Padilla un permiso de uso para operar un local de colmado-cafetín. Posteriormente, el local comercial fue arrendado en el año 2003 al señor Jessie Ortiz Rosado, quien lo administró hasta el 2008.

El señor Ortiz sometió una solicitud ante la Oficina de Permisos del Municipio con el propósito de obtener un permiso de uso para establecer en el local un cafetín con venta de bebidas alcohólicas, cinco máquinas de entretenimiento para adultos y una vellonera. Para ese entonces, el distrito donde ubicaba el local comercial había cambiado su clasificación de *Residencial Urbano Dos* (RU-2) a distrito de *Uso Mixto Urbano* (UMU), según el Mapa de Ordenación Territorial del Municipio y como resultado del reconocimiento de la autonomía del Municipio de Bayamón. La solicitud del permiso de uso se denegó y también la reconsideración.

El señor Ortiz presentó una apelación ante la Junta de Apelaciones sobre Construcciones y Lotificaciones (Junta de Apelaciones). Durante la vista pública ante la Junta de Apelaciones, las partes acordaron enmendar la solicitud y devolverla al Municipio para su evaluación. Por consiguiente, en su resolución, la Junta de Apelaciones devolvió el caso al Municipio para que evaluara la solicitud enmendada de permiso de uso que el señor Ortiz le sometería.

Posteriormente, el Municipio presentó un *injunction* en el Tribunal de Primera Instancia (DPE 2006-1347) contra el señor Ortiz y alegó que éste operaba un local para el cual se le había denegado el permiso de uso. Le solicitó al tribunal que ordenara el cese de las operaciones en el establecimiento. También alegó que el señor

Ortiz no había sometido la solicitud de permiso de uso enmendada que le ordenó la Junta de Apelaciones en su resolución.

El Tribunal de Primera Instancia emitió una sentencia en el caso de *injunction* presentado por el Municipio en la cual se declaró sin jurisdicción para entender en el caso en esa etapa de los procedimientos. En su sentencia de 6 de marzo de 2007, el tribunal enfatizó que hasta ese momento el Municipio no había emitido ninguna orden de paralización de uso de las operaciones en el local. Por lo tanto, concluyó que era al Municipio a quien le correspondía evaluar la solicitud de permiso de uso y *emitir toda aquella orden atinente a la operación del mencionado negocio mientras evalúa tal solicitud.*

El 18 de julio de 2007, el Municipio emitió una orden de paralización de uso del *Colmado El Padilla* porque éste carecía de los permisos de uso necesarios para operar las máquinas de entretenimiento, el billar y la vellonera. La orden fue acompañada por un documento que tituló *Aclarando particulares*, en el cual el Municipio detalló las razones por las cuales el establecimiento comercial no tenía permiso de uso. El Municipio emitió una segunda orden de paralización de uso el 14 de septiembre de 2007.

El señor Ortiz no acató las órdenes de paralización de uso emitidas por el Municipio. El 18 de septiembre de 2007, el señor Edgardo Rodríguez Pomales, en representación de los residentes en los alrededores del colmado-cafetín, presentó una Petición en Auxilio de Jurisdicción en el Tribunal de Primera Instancia (DPE 2007-1135) y solicitó que se apliquen y se pongan en vigor las dos órdenes de paralización emitidas por el Municipio. Posteriormente, el Municipio se unió a la solicitud de los vecinos y el tribunal permitió la intervención.

El señor Ortiz presentó una moción de desestimación ante el Tribunal de Primera Instancia en la cual adujo que nunca se le cursó copia de la Petición Urgente en Auxilio de Jurisdicción. Alegó que no se incluyó como partes a los propietarios del *Colmado El Padilla*, quienes obtuvieron la autorización de uso de la Junta de Planificación en el 1952. Sostuvo que la petición no estaba juramentada y diligenciada conforme las disposiciones del Artículo 28 de la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley 76 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 72c (Ley Orgánica de A.R.P.E.). Finalmente, alegó que no procedía la petición porque el Tribunal había dictado una sentencia en otro caso con las mismas partes en el cual determinó que no tenía jurisdicción. Adujo que el auxilio de jurisdicción era un intento de revisar de forma tardía la determinación del caso de *injunction* presentado por el Municipio (DPE 2006-1347).

Luego de celebrada la vista, el Tribunal de Primera Instancia denegó la demanda porque no se agotaron los remedios administrativos disponibles. En su sentencia, el tribunal le ordenó al Municipio que emitiera su decisión en cuanto al permiso de uso enmendado a la mayor brevedad para facilitar la continuación de los procedimientos.

El Municipio presentó el recurso de apelación, ahora ante nuestra consideración. Alegó, principalmente, que erró el Tribunal de Primera Instancia al concluir que el Municipio tenía que agotar los remedios administrativos antes de ordenar la paralización del uso ilegal de un establecimiento, tal y como, en dos ocasiones, lo requirió el Municipio ante la falta de un permiso de uso que le autorizara a operar.

El señor Ortiz presentó, oportunamente, su alegato como parte apelada. Además, luego compareció el señor Padilla y sometió una solicitud de sustitución de parte ante el Tribunal de Apelaciones. El señor Jesse Ortiz argumentó que entregó el establecimiento comercial a su propietario, el señor Padilla, y éste sostiene que operaría el establecimiento bajo los mismos parámetros que lo hizo el señor Ortiz, por lo que procedía su sustitución como parte apelada en el pleito. El señor Padilla, además, argumentó sobre los méritos del recurso de apelación.

Los vecinos se opusieron a la solicitud de sustitución de parte por entender que se trataba de un intento velado de darle vida jurídica a un permiso de uso que había caducado y que, jurídicamente, era inexistente. Alegaron que luego de la promulgación de la Ley Orgánica de A.R.P.E., el señor Padilla tenía un año para solicitar la validación

de su permiso de uso por escrito y éste nunca lo hizo, por lo cual, el permiso adquirido en el 1952, al presente resultaba inoficioso. Adujeron, además, que el señor Ortiz cerró el establecimiento cuando terminó su arrendamiento, lo cual hacía la controversia ante el Tribunal de Apelaciones una académica, pues la necesidad de cumplir con una orden de cierre del Municipio desaparece con el cierre voluntario del establecimiento. El Municipio también presentó una solicitud de oposición de sustitución de parte en la cual acogió los argumentos presentados por los vecinos y añadió que no procedía la sustitución, pues los permisos operan sobre la propiedad y no sobre la persona.

Teniendo el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II
### 1- Naturaleza de los permisos de uso

El Reglamento de Calificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación) Reglamento 7628, Departamento de Estado, 9 de enero de 2009, es el instrumento de planificación que guía y controla el desarrollo y uso de los terrenos en Puerto Rico. Reglamento de Calificación de Puerto Rico, *supra*, pág. 2. El reglamento aplica en todo Puerto Rico y a toda persona o agrupación de personas dentro de las áreas delimitadas por los mapas de calificación adoptados a su amparo. Reglamento de Calificación de Puerto Rico, *supra*, pág. 2.

La sección 3.02 del Reglamento de Calificación de Puerto Rico establece que A.R.P.E. debe expedir permisos *de uso, para ocupar o usar cualquier propiedad, estructura o terrenos*. Reglamento de Calificación de Puerto Rico, *supra*, pág. 8. La misma sección del Reglamento establece lo siguiente:

"[s]i el uso para el cual se expide un permiso se descontinuara por dos (2) años o más, el mismo dejará de ser válido independientemente de que sea un uso permitido o no conforme legal, excepto permisos expedidos para viviendas que no tendrán fechas de vencimiento. El permiso se expide a la propiedad (*In Rem*), por lo que un cambio de dueño no requiere un nuevo permiso si mantiene el mismo en uso." Reglamento de Calificación de Puerto Rico, *supra*, págs. 8-9.

### 2- El proceso para obtener permisos de uso en el Municipio de Bayamón

La Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico, Ley 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 *et seq.* (Ley de Municipios Autónomos) fue promulgada para que los municipios tuvieran los poderes y facultades esenciales para un funcionamiento gubernamental democrático efectivo. 21 L.P. R.A. sec. 4001. Esta ley le otorga a los municipios la facultad de *[e]stablecer política, estrategias y planes dirigidos a la ordenación de su territorio, la conservación de sus recursos y su óptimo desarrollo.* 21 L.P.R.A. sec. 4054 (h).

De igual forma, la Ley de Municipios Autónomos autoriza a los municipios a adoptar Planes de Ordenación. El Art. 13.004 de la Ley de Municipios Autónomos dispone que:

"[e]stos Planes de Ordenación constituirán instrumentos del territorio municipal. Los mismos protegerán los suelos, promoverán el uso balanceado, provechoso y eficaz de los mismos y propiciarán el desarrollo cabal de cada municipio. En cuanto respecta a la reglamentación de los usos del suelo, los Planes de Ordenación incluirán las materias relacionadas con la organización territorial y con la construcción [bajo la] jurisdicción de la Junta de Planificación y la Administración de Reglamentos y Permisos." 21 L.P.R.A. sec. 4602.

De acuerdo a las facultades otorgadas a los municipios, el Municipio de Bayamón promulgó el Reglamento de Ordenación Núm. 3 que Regirá las Disposiciones Sustantivas y Procesales de la Oficina de Permisos del

Municipio de Bayamón (Reglamento de Ordenación Núm. 3).

El inciso (A) de la sección 3.05 del Reglamento de Ordenación Núm. 3 establece que "ningún edificio o estructura podrá ser ocupado o utilizado hasta que se emita un permiso de uso por el Oficial de Permisos". Se emitirá el permiso de uso luego de que se determine que se ha cumplido con los requerimientos del Reglamento de Ordenación Núm. 3 en alguna de las siguientes etapas, según el caso:

"(1) Antes de comenzar la ocupación y uso de un edificio o estructura que fue construido, rehabilitado, ampliado o movido.

(2) Cuando ocurre cambio en la tenencia o uso de un edificio o estructura no– residencial existente.

(3) Previo a la ocupación y uso de terreno vacante.

(4) El cambio en el uso de terreno a uso de clasificación diferente.

(5) Cualquier cambio en el estatus de uso no conforme." Reglamento de Ordenación Núm. 3, a la pág. 27.

El proceso para solicitar un permiso de uso en el Municipio de Bayamón comienza con la radicación de una solicitud en la Oficina de Permisos del Municipio de Bayamón. Reglamento de Ordenación Núm. 3, a la pág. 25. Si el Oficial de Permisos determina que la solicitud está completa, ésta será evaluada en sus méritos. Reglamento de Ordenación Núm. 3, a la pág. 25. El Oficial de Permisos evaluará la propiedad descrita en la solicitud de permiso de uso y determinará si el uso de la propiedad y las estructuras cumplen con los requisitos del Reglamento. Reglamento de Ordenación Núm. 3, a la pág. 27. Si el uso propuesto no cumple con las disposiciones del Reglamento, el Oficial de Permisos debe denegar la solicitud y emitir una resolución al respecto, en la cual debe citar las disposiciones reglamentarias que impiden la expedición del permiso. También debe advertirle a las partes sobre su derecho de radicar una apelación. Reglamento de Ordenación Núm. 3, a la pág. 28.

El Oficial Examinador puede celebrar vistas públicas o administrativas para evaluar el otorgamiento del permiso de construcción o de uso en todos los casos en los que lo disponga la ley o para los casos en que el Municipio lo estime pertinente. Reglamento de Ordenación Núm. 3, a la pág. 51. Finalizada la vista el Oficial de Permisos emitirá su determinación mediante una resolución. En dicha resolución se le debe advertir a la parte afectada sobre su derecho de solicitar una reconsideración. Reglamento de Ordenación Núm. 3, a las págs. 55-56.

Luego de solicitar la reconsideración, la parte afectada por una decisión de un Oficial de Permisos sobre una competencia que A.R.P.E. o la Junta de Planificación le haya transferido al Municipio puede interponer un recurso de apelación o puede recurrir al foro judicial para solicitar cualquier remedio que proceda en derecho. Para esto, la parte se dejará llevar por los términos que para estos efectos determine la Ley de Procedimiento Administrativo Uniforme, Ley 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2173, (L.P.A.U.). Reglamento de Ordenación Núm. 3, a la pág. 78.

Los permisos de no conformidad legal serán referidos por el Oficial de Permisos a un Comité de Permisos, quien emitirá sus recomendaciones para que el Oficial de Permisos tome una determinación. Reglamento de Ordenación Núm. 3, a la pág. 59.

El Reglamento de Ordenación Núm. 3 también cuenta con un procedimiento de revisión discrecional para permitirle al Municipio:

"considerar las solicitudes de permisos que generalmente son compatibles con los usos permitidos con el

distrito de ordenación concernido, pero lo cual requiere un estudio individual de su localización, diseño y configuración. El proceso de aprobación discrecional también le permite al Municipio conceder algunas desviaciones de los términos literales establecidos en el Reglamento donde pueden existir diferencias de tipo conceptual innecesarias restringiendo la flexibilidad del Reglamento." Reglamento de Ordenación Núm. 3, a la pág. 41.

Si el Oficial de Permisos determina que se trata de un procedimiento de revisión discrecional, debe preparar un informe técnico sobre los méritos de la solicitud y le debe referir el caso a un Comité de Permisos. Reglamento de Ordenación Núm. 3, a la pág. 42. Este comité evaluará la solicitud, el informe técnico y las recomendaciones de la Junta de Comunidad, generadas en las vistas públicas celebradas al efecto, y rendirá sus recomendaciones al Oficial de Permisos. Reglamento de Ordenación Núm. 3, a la pág. 42.

El Municipio también posee las facultades y los recursos legales para asegurar el cumplimiento con las disposiciones del Reglamento de Ordenación Núm. 3. A estos efectos, la sección 12.04 de dicho Reglamento dispone que:

"[l]a transferencia a un municipio de las facultades de la Junta de Planificación y de la Administración de Reglamentos y Permisos, conforme a lo establecido en el Artículo 13.012 de este Capítulo, conllevará la transferencia de todas las facultades legales que tienen dichas agencias para promover el cumplimiento e implantación de la reglamentación vigente sobre el uso del suelo. El Municipio estará autorizado a instar los recursos legales concernidos, representado por Alcalde o por el Oficial de Permisos para atender, denunciar, procesar y resolver las querellas sobre las violaciones de uso y construcción relacionadas con las facultades o competencias transferencias (*sic*)." Reglamento de Ordenación Núm. 3, a las págs. 74-75.

La transferencia a los municipios de las facultades que posee A.R.P.E. y la Junta de Planificación implica que el Municipio de Bayamón tiene a su favor los poderes delegados de la Ley Orgánica de la Junta de Planificación, Ley 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62 *et seq.*, y la Ley Orgánica de A.R.P.E, *supra*.

El Artículo 25 de la Ley Orgánica de A.R.P.E. establece que A.R.P.E. puede expedir órdenes de hacer o no hacer o de cese y desistimiento para que se tomen las medidas preventivas o de control necesarias para lograr los propósitos de esa ley. 23 L.P.R.A. sec. 71x. La persona contra la cual se expidió la orden puede solicitar una vista administrativa para exponer las razones por las cuales A.R.P.E. debería modificar, revocar o de otra forma sostener la orden. 23 L.P.R.A. sec. 71x. La resolución, orden o dictamen sólo puede ser revisada en la sala de San Juan del Tribunal de Primera Instancia o la sala con jurisdicción sobre el lugar donde ubique el proyecto o la estructura y se mantendrá en vigor hasta que el tribunal tome otra determinación. 23 L.P.R.A. sec. 71x.

A estos efectos, el Artículo 5.04 del Reglamento de Procedimientos Adjudicativos de la Administración de Reglamentos y Permisos establece que:

"[s]i el inspector o funcionario advierte una obra o uso ilegal construida o usada en contravención de alguna disposición de las leyes y reglamentos o del permiso otorgado, podrá ordenar la inmediata paralización de la parte correspondiente de la obra o el cese del uso, bajo las condiciones y criterios dispuestos en la Subsección 13.06 de este Reglamento, hasta tanto sea subsanada la condición ilegal o defectuosa. Además, podrá expedir el boleto de multa administrativa que corresponda. (Énfasis suprimido)." Reglamento de Procedimientos Adjudicativos de la Administración de Reglamentos y Permisos, Reglamento Núm. 6435, Departamento de Estado, 19 de abril de 2002, pág. 30.

## 3- A.R.P.E. y el Artículo 28 de su Ley Orgánica

El Artículo 28 de la Ley Orgánica de A.R.P.E. provee otro mecanismo para impugnar violaciones a usos o construcciones que violen sus disposiciones o las de los reglamentos adoptados a su amparo. Dicho artículo establece lo siguiente:

"[e]l administrador o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina que resultare o pudiera resultar especialmente perjudicado por cualesquiera de dichas violaciones, además, de los otros remedios provistos por ley, podrá entablar recurso de interdicto, *mandamus*, nulidad o cualquier otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, o cualquier edificio o uso, hechos o mantenidos en violación de este capítulo o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración." (Énfasis en el original).

Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en ley para evitar infracciones a este capítulo y a todos los reglamentos relacionados con la misma, para evitar cualquier estorbo (*nuisance*) o adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada. 23 L.P.R.A. sec. 72.

Esta acción cuenta con un procedimiento especial que en lo pertinente dispone:

"(a) Cuando, por persona o autoridad con derecho a ello, se presente petición jurada ante un juez del Tribunal de Primera Instancia de Puerto Rico identificando un edificio o casa, rótulo o anuncio, alegando que el mismo está siendo construido, instalado, eregido (*sic*), exhibido, mantenido, ampliado, reparado, trasladado, alterado, reconstruido, o usado, o demolido, en violación de este capítulo o de los reglamentos, mapas o planos aplicables especificando los actos constitutivos de dicha violación e identificando la persona o personas que estén cometiendo la violación en cuestión, el tribunal expedirá una orden provisional dirigida (*sic*) a dichas personas requiriéndoles para que paralicen inmediatamente, bajo apercibimiento de desacato la obra, uso o instalación a que la petición se refiere, hasta tanto se ventila judicialmente su derecho.

(b) En la orden provisional se fijará la fecha de la vista que deberá celebrarse dentro de los diez (10) días siguientes a la radicación de la petición y se advertirá al querellado que en dicha vista podrá él comparecer, personalmente o por abogado, a confrontarse con las imputaciones que se le hacen, pudiendo dictarse la orden permanente si dejare él de comparecer.

(c) Tendrán derecho a presentar la petición los colindantes y vecinos que pudieren ser afectados por la violación y los funcionarios designados por los organismos gubernamentales que insten la acción, así como ingenieros o arquitectos que actúen como proyectistas o inspectores de la obra." 23 L.P.R.A. sec. 72.

La orden provisional se debe diligenciar en la misma forma en que se diligencia la citación para la primera comparecencia en casos de desahucio y se le debe entregar al querellado copia de la orden y de la petición jurada. 23 L.P.R.A. sec. 72(d). El querellado no tiene que someter una alegación escrita en contestación, pero presentará sus alegaciones en la corte. 23 L.P.R.A. sec. 72(e). En su resolución, el tribunal podrá ordenar la paralización permanente de los actos alegados en la petición o dejar sin efecto la orden provisional. 23 L.P.R.A. sec. 72(f).

El procedimiento especial establecido en el Artículo 28 de la Ley Orgánica de A.R.P.E. es "un mecanismo estatutario, independiente, especial sumario y limitado." *Plaza Las Américas v. N & H*, 166 D.P.R. 631, 646 (2005). Se trata de un mecanismo de *injunction* para hacer valer las leyes y los reglamentos de planificación. *A.R.P.E. v. Rivera*, 159 D.P.R. 429, 445 (2003). El propósito del procedimiento especial establecido en el Artículo 28 de la Ley Orgánica de A.R.P.E. es hacer viable la efectividad de las leyes y los reglamentos de planificación que A.R.P.E. debe fiscalizar mediante la paralización de obras o usos. *Plaza Las Américas v. N & H, supra*, pág. 646.

El procedimiento se puede invocar cuando se cumplen tres requisitos, a saber, la realización de un uso o una obra por parte del querellado; que dicha obra o uso sea contraria a una ley o reglamento de planificación; y que A.R.P. E. tenga la obligación de velar por su cumplimiento. *Plaza Las Américas v. N & H, supra,* pág. 646. Este procedimiento especial no desplaza la función administrativa, pues se requiere una acción ulterior e independiente para adjudicar finalmente la controversia. *Plaza Las Américas v. N & H, supra,* pág. 647.

De acuerdo a las normas establecidas en la Ley Orgánica de A.R.P.E., toda obra o uso se debe realizar con un permiso adecuado y válido. *Plaza Las Américas v. N & H, supra,* pág. 654. Lo fundamental en casos donde se atienden las órdenes provisionales de paralización al amparo del Artículo 28 de la Ley Orgánica de A.R.P.E. es determinar si se estaba usando ilegalmente algún espacio de terreno. *A.R.P.E.. v. Rivera, supra,* pág. 447. Cuando el uso operado es distinto al uso aprobado, el Tribunal de Primera Instancia debe declarar con lugar el *injunction* y paralizar las operaciones ilegales. *A.R.P.E. v. Rivera, supra,* pág. 447.

El procedimiento sumario del Artículo 28 de la Ley Orgánica de A.R.P.E. no está sujeto a las normas de jurisdicción primaria o agotamiento de remedios. *Plaza Las Américas v. N & H, supra,* pág. 647. El Artículo 28 de la Ley Orgánica de A.R.P.E. revela la intención legislativa de favorecer el foro judicial para atender los reclamos de los ciudadanos para evitar estorbos en su propiedad. *Mun. de Caguas v. AT & T, supra,* pág. 409. Esto se manifiesta en el propio Artículo 28, al otorgarle al querellante la facultad de acudir directamente al foro judicial cuando se instan reclamaciones dirigidas a evitar estorbos a la propiedad. *Plaza Las Américas v. N & H, supra,* pág. 648.

El Tribunal Supremo ha reiterado que puede usarse el *injunction* para eludir el trámite administrativo cuando el agravio sea tan grave que requiera urgente reparación y cuando la gestión administrativa sea ineficaz. *S.L.G. Flores, Jiménez v. Colberg, supra.*

La concesión de un *injunction* preliminar depende de la naturaleza de los daños que se le pueden ocasionar a las partes de concederse o denegarse el *injunction*; la irreparabilidad de los daños o la existencia de un remedio adecuado en ley; la probabilidad de que la parte promovente prevalezca en los méritos; la probabilidad de que la causa se torne académica; y el posible impacto sobre el interés público. *Asoc. Vec. Villa Caparra v. Asoc. Fom. Educativo,* **2008 J.T.S. 68**, 173 D.P.R. ___ (2008).

El Tribunal Supremo ha establecido que el Artículo 28 "autoriza expresamente a entablar recursos de interdicto para impedir el uso de un edificio o pertenencia en violación a la ley y los reglamentos." *A.R.P.E. v. Ozores Pérez,* 116 D.P.R. 816, 820 (1986). En el caso *A.R.P.E. v. Ozores Pérez, supra,* A.R.P.E. decidió revocar un permiso de uso de un salón de actividades. Esa decisión fue apelada ante la Junta de Apelaciones sobre Construcciones y Lotificaciones. El Tribunal Supremo decidió que la determinación de A.R.P.E. por lo menos establecía un estado provisional de derecho sujeto a los resultados de la apelación, por lo que "podía legítimamente hacer valer tal estado mediante un recurso interdictal instado ante el Tribunal de Distrito, autorizado por el Art. 28 de la ley." *A.R.P.E. v. Ozores Pérez, supra,* pág. 822.

## 4- La norma de agotamiento de remedios

La sección 1.4 de la L.P.A.U. dispone que dicha ley aplicará a los procedimientos administrativos que se conduzcan ante todas las agencias, según es definido el término en la misma ley. 3 L.P.R.A. sec. 2103. La sección 1.3 de la L.P.A.U. excluye a los gobiernos municipales, sus entidades o corporaciones de la definición del término agencia. 3 L.P.R.A. sec. 2102. Sin embargo, el Artículo 13.012 de la Ley de Municipios Autónomos establece que las facultades de la Junta de Planificación y de A.R.P.E. sobre la ordenación territorial que le sean transferidas a los municipios se ejercerán conforme a las normas y procedimientos establecidos en la legislación, reglamentación y política pública aplicable a la facultad transferida, incluyendo las disposiciones de la L.P.A.U. 21 L.P.R.A. sec. 4610.

El agotamiento de remedios es una norma de autolimitación judicial reconocida en la L.P.A.U. que determina la etapa en que un tribunal debe intervenir en una controversia presentada inicialmente en un foro administrativo. *S.L.G. Flores, Jiménez v. Colberg*, **2008 J.T.S. 110**, 174 D.P.R. ___ (2008). Esta norma procura que la parte que desea obtener un remedio de una agencia utilice todas las vías administrativas disponibles antes de recurrir al tribunal. *Mun. de Caguas v. AT & T*, 154 D.P.R. 401, 407 (2001). Su propósito es dilucidar cuándo es el momento indicado para que los tribunales interfieran en una controversia sometida originalmente a una intervención administrativa. *Mun. de Caguas v. AT & T, supra*, pág. 407. Por lo tanto, cuando la norma es de aplicación, el tribunal debe abstenerse de intervenir hasta que la agencia atienda el asunto. *S.L.G. Flores, Jiménez v. Colberg, supra*. El Tribunal Supremo ha expresado que:

"[l]a norma se invoca usualmente para cuestionar la acción judicial de un litigante que acudió originalmente a un procedimiento administrativo o era parte de éste y que recurrió luego al foro judicial aunque aún tenía remedios administrativos disponibles." *Mun. de Caguas v. AT & T, supra*, pág. 408.

De acuerdo a lo mencionado anteriormente, para que aplique la doctrina de agotamiento de remedios, debe existir alguna fase del procedimiento administrativo que la parte tiene que llevar a cabo y todavía no lo ha hecho. *Mun. de Caguas v. AT & T, supra*, pág. 409. Además, es necesario que la parte peticionaria ante el foro judicial sea la que participó en el procedimiento administrativo y dejó sin agotar alguna fase de éste que permanece pendiente. *Mun. de Caguas v. AT & T, supra*, pág. 409.

Por otro lado, la L.P.A.U. dispone en su sección 4.3 que el tribunal puede relevar a un peticionario de agotar todos o alguno de los remedios administrativos cuando:

"dicho remedio sea inadecuado, o cuando requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa." 3 L.P.R.A. sec. 2173.

### III
### La doctrina de academicidad y la sustitución de parte

Examinemos, en primer lugar, el asunto de la academicidad y la sustitución de parte.

La academicidad es una doctrina de justiciabilidad que establece que un caso no deberá atenderse judicialmente cuando se trata de obtener un fallo sobre una controversia disfrazada, se intente obtener una determinación de derecho antes de que se haya entablado una reclamación o se intente obtener una sentencia sobre un asunto que al dictarse ya no tiene efectos prácticos sobre una controversia. *San Gerónimo Caribe Project v. A.R.P.E.*, **2008 J.T.S. 149**, 174 D.P.R. ___ (2008).

El Tribunal Supremo ha expresado que cuando se analiza la academicidad, se deben evaluar los eventos anteriores, próximos y futuros, para determinar si la controversia se mantiene viva y presente con el transcurso del tiempo. *Rullán v. Fas Alzamora*, 166 D.P.R. 742, 761 (2006).

No obstante, existen cuatro excepciones a la doctrina de academicidad. Estas son: cuando se presenta una controversia recurrente y capaz de evadir la revisión judicial; cuando la situación de hechos ha sido modificada por el demandado, pero no tiene visos de permanencia; cuando la controversia se ha convertido en académica para el representante de la clase, pero no para otros miembros; y cuando persisten consecuencias colaterales que no se han tornado en académicas. *P.N.P. v. Carrasquillo*, 166 D.P.R. 70, 76 (2005).

La sustitución de parte solicitada por el señor Ortiz procede. Los permisos de uso son de naturaleza *in rem* o sobre la cosa, por lo que una acción entablada para impugnar un permiso de uso de un establecimiento comercial debe continuar, independientemente de quién sea el administrador.

En el caso de autos, el señor Ortiz solicitó su sustitución porque el arrendamiento sobre el local terminó y el propietario debe continuar el trámite. Los vecinos alegaron que el caso se tornó académico, pues, al cerrarse el local, se cumplió con el objetivo de la orden de paralización de uso del Municipio. No obstante, aunque el apelado cesó las operaciones en contra de la orden de paralización, esta modificación no tiene visos de permanencia. El señor Padilla podría arrendarle el establecimiento a otra persona que intente administrarlo de la misma forma en que lo hizo el señor Ortiz. Si se diera esta situación, surgirían las mismas controversias con los vecinos y el Municipio, ya que el permiso de uso del establecimiento no depende de la persona que lo administra.

El proceso municipal de evaluación de la solicitud enmendada de permiso de uso deberá continuar de forma paralela al proceso judicial para que las partes —el propietario del negocio y los vecinos—, conozcan los usos permitidos en la propiedad donde ubica el *Colmado El Padilla*. La parte afectada por la determinación del Municipio podrá utilizar el proceso de revisión apelativa que le autoriza la ley.

## IV

Apliquemos las normas de derecho mencionadas al caso ante nuestra consideración. El Municipio tiene la facultad en ley para emitir las órdenes de paralización de uso de locales no autorizados. En el presente caso, el Municipio dictó dos órdenes de paralización contra el señor Ortiz, los días 18 de julio y 14 de septiembre de 2007. Los vecinos y el Municipio tienen derecho a solicitarle al tribunal que ordene el cumplimiento de tales órdenes. Los vecinos acudieron directamente al Tribunal de Primera Instancia para solicitar que se pusieran en vigor las órdenes de paralización del Municipio, conforme lo permite el Art. 28 de la Ley de A.R.P.E., *supra*. Los vecinos o el Municipio no tenían que agotar remedios administrativos antes de hacerle tal solicitud al tribunal. Los vecinos y el Municipio pretendían dar eficacia a las órdenes del Municipio, que eran retadas por el señor Ortiz. Por lo tanto, la doctrina de agotamiento de remedios no es de aplicación en el presente caso, pues no había razón por la cual el tribunal se abstuviera de intervenir; por el contrario, debió permitir el procedimiento expedito del Art. 28, *supra*.

La diferencia entre las dos sentencias del Tribunal de Primera Instancia generadas entre estas partes es notable. En el primer caso de *injunction* presentado por el Municipio (DPE 2006-1347), el Tribunal de Primera Instancia decidió que no tenía jurisdicción, precisamente porque el Municipio no había emitido ninguna orden de paralización en contra del señor Ortiz.

En el presente caso (DPE 2007-1135), no enfrentamos ese problema porque cuando se presentó la petición de *Injunction* en el Tribunal de Primera Instancia, el Municipio ejerció su facultad y ordenó la paralización en dos ocasiones. La petición de los vecinos y del Municipio en auxilio de jurisdicción se presentó al tribunal para que hiciera valer dichas órdenes. Se trata de un proceso legal paralelo al proceso de evaluación de permisos de usos y construcción que lleva a cabo el Municipio.

El Municipio y los vecinos también tenían a su disposición el procedimiento especial del Artículo 28 de la Ley Orgánica de A.R.P.E. para impedir que el *Colmado El Padilla* se operara en violación a las leyes y reglamentos aplicables. Estas acciones deben entablarse correctamente y según los requisitos establecidos en dicha ley. Por lo tanto, la petición debe ser juramentada y se le debe entregar al querellado copia de la petición jurada y de la orden del tribunal, entre otros requisitos. Si se cumplen los requisitos especificados en el Artículo 28 de la Ley Orgánica de A.R.P.E., el tribunal podrá dilucidar los méritos, dictar una orden provisional de paralización, y si se determina que en el uso se viola alguna ley o reglamentación, entonces el tribunal declarará *con lugar* el *injunction* y ordenará la paralización solicitada y, en caso contrario, la denegará. En las

circunstancias del caso ante nuestra consideración, erró el Tribunal de Primera Instancia al ordenar que se agotaran los remedios administrativos.

## V

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Primera Instancia. Se devuelve el caso para la continuación del trámite judicial conforme a lo ordenado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones